In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2645

DONG YI and EDGAR MARTINEZ, individually
and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

STERLING COLLISION CENTERS, INC.,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3138—**Paul E. Plunkett**, *Judge*.

———————

ARGUED JANUARY 12, 2007—DECIDED MARCH 13, 2007

———————

Before POSNER, WOOD, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.  The Fair Labor Standards Act requires that employees be paid one and a half times their hourly wage for every hour that they work in excess of 40 hours a week. 29 U.S.C. § 207(a)(1). But there is an exemption for workers in retail stores or other service establishments (including the automobile repair service that is the defendant in this case) who (1) are paid a wage that exceeds one and a half times the minimum wage and (2) receive more than half their compensation

in the form of "commissions on goods or services." § 207(i). In this suit, resolved in favor of the defendant on summary judgment, we are required to decide whether a system of compensation common in the auto repair industry is a commission system within the meaning of the statute.

The facts are undisputed; the question is what "commissions on goods or services" means. The plaintiffs' contention that the defendant must prove its entitlement to the exemption by "clear and affirmative evidence" is therefore irrelevant; for evidence is used to resolve factual disputes, and there are none in this case. But the contention is also incorrect, for nothing in the statute, the regulations under it, or the law of evidence justifies imposing a requirement of proving entitlement to the exemption by "clear and affirmative evidence."

A number of FLSA cases *say* this is the standard. *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004); *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001); *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995); *Clark v. J.M. Benson, Co.*, 789 F.2d 282, 286 (4th Cir. 1986). But they say it "without explanation of what the phrase means." *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 578-79 and n. 1 (6th Cir. 2004); see also *Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006).

The phrase first appeared in *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir. 1984), and was not explained, but was merely attributed to two earlier cases, *Walling v. General Industries Co.*, 330 U.S. 545, 547-48 (1947), and *Legg v. Rock Products Mfg. Corp.*, 309 F.2d 172, 174 (10th Cir. 1962). *General Industries* just says that the burden of proving entitlement to an exemption is on the defendant (of course). *Legg* says that "one asserting that an employee is

exempt from the wage and hour provisions of the Act has the burden of establishing the exemption affirmatively and clearly." *Legg* offers no explanation for defining the burden thus but merely cites *General Industries* and an earlier case, *McComb v. Farmers Reservoir & Irrigation Co.*, 167 F.2d 911, 915 (10th Cir. 1948), which says that an employer seeking an exemption "has the burden of showing affirmatively that they [the employees] come clearly within an exemption provision," citing *General Industries*.

Earlier still, we read that "the burden is upon the appellant to bring itself plainly and unmistakably within the terms and the spirit of the exemptions." *Armstrong Co. v. Walling*, 161 F.2d 515, 518 (1st Cir. 1947). This formula, which also appears in *McComb v. Hunt Foods, Inc.*, 167 F.2d 905, 908 (9th Cir. 1948), had been lifted from *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945), where the Supreme Court had said: "Any exemption from such humanitarian and remedial legislation [i.e., the FLSA] must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."

At this point the trail grows cold. But one sees what happened: the opinion in *Farmers Reservoir* used "affirmatively" and "clearly," and the opinions in *Armstrong* and *Hunt Foods* (following *A.H. Phillips*) "plainly" and "unmistakably," merely to indicate that exemptions are to be construed narrowly—that plainly is the meaning of the passage in *A.H. Phillips*—and, in the *Farmers Reservoir* version, also that the burden of proof is on the defendant,

since entitlement to an exemption is an affirmative defense. The phrases were then garbled (what could "affirmative evidence" mean?—it implies that there must be something called "negative evidence"), the garbled form repeated, and the original meaning forgotten.

Also forgotten was the presumption that the burden of proof in federal civil cases is proof by a preponderance of the evidence. "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991), quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-90 (1983). The exemption from the FLSA's overtime provision, at issue in this case, curtails no greater individual interest or right than the right to a discharge in bankruptcy, at issue in *Grogan*, where the Supreme Court rejected a requirement that a creditor prove by clear and convincing evidence his entitlement to an exception to the debtor's right to a discharge.

Even if understood as merely a clumsy invocation of the familiar principle of statutory interpretation that exemptions from a statute that creates remedies should be construed narrowly, the "clear and affirmative evidence" formula of *United Video* and the cases following it is unsatisfactory because the underlying principle is mysterious. Why should one provision in a statute take precedence over another? But there is an answer in the passage we quoted from *Phillips* warning that to interpret an exemption broadly threatens "to abuse the interpretative process and to frustrate the announced will of the people." *A.H. Phillips, Inc. v. Walling*, *supra*, 324 U.S. at 493. Unless

"due regard to the plain meaning of statutory language and the intent of Congress" indicates otherwise, *id.*; see also *EEOC v. AIC Securities Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995); *Graczyk v. United Steelworkers of America*, 763 F.2d 256, 262 (7th Cir. 1985), an exemption should not be interpreted so broadly that it renders the statutory remedy ineffectual or easily evaded. With this construal, there can be no quarrel. It suggests that the principle of narrow interpretation of exemptions is a tie breaker, *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177-78 (7th Cir. 1987); *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1186 (8th Cir. 1993), and although the present case is not entirely free from doubt, it is not a tie.

The statute does not define "commission." About all that is clear is that the word need not be used for the exemption to be applicable. *Mechmet v. Four Seasons Hotels, Ltd.*, *supra*, 825 F.2d at 1177; *Klinedinst v. Swift Investments, Inc.*, *supra*, 260 F.3d at 1254, 1257; 29 C.F.R. § 779.416; Department of Labor, Wage & Hour Division, *Field Operations Handbook* § 21h04(d) (July 12, 1990); Department of Labor, Opinion Letter No. FLSA152006-NA (June 29, 2006), www.dol.gov/esa/whd/opinion/FLSANA/2006/2006_06_29_15NA_FLSA.pdf. The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold. Although his income is likely to be influenced by the number of hours a week that he works, the relation is unlikely to be a regular one. In one week business may be slow; he may make no sales and thus have no income for that week. The next week business may pick up and by working overtime that week he may be able to make up the income he lost because of slack

business the previous week. Over a year his hours of work may be similar to those of regular hourly employees. So if he had to be paid overtime, his annual income would be higher than theirs even though he hadn't worked more hours over the course of the year than they had. We take this to be the rationale for the commission exemption from the FLSA's overtime provision. See *Mechmet v. Four Seasons Hotels, Ltd.*, *supra*, 825 F.2d at 1176-77; *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1045-46 (9th Cir. 2005). There is no relevant legislative history.

Now suppose two real estate brokers work on the sale of the same house, and the question arises how they should split their commission. One broker suggests a 50-50 split, but the other ripostes, "I put in two-thirds of the time on this sale, so I should get two-thirds of the commission." Suppose the first broker agrees. Does this mean, because the number of hours they worked figured in their split of the commission, that they weren't paid a commission, but an hourly wage? Surely not. This simple example turns out to resolve the present, complicated-seeming case.

Sterling, the defendant, a chain of auto repair shops, charges its customers as follows. It calculates the number of hours normally required to do a given type of repair (these are called "booked hours") and multiplies that number by a dollar figure. The product of this multiplication is the labor price of the repair to the customer. Sterling adds material costs to the labor price to come up with a final price. A team of mechanics is then assigned to the job. Each member of the team keeps track of the hours he works on the job. When it's completed and the hours of the team members are added up, Sterling determines each member's compensation by multiplying (1) the number of booked hours for the job by (2) the ratio of the

team member's actual hours worked to the total hours worked by the team, and then by (3) a wage, per booked (not actually worked) hour, based on the skill or quality of the individual team member.

So suppose the number of booked hours assigned to the repair of a headlight is 6; a team of two mechanics completes the job in 3 hours; one member of the team, call him A, worked 2 hours and the other, B, 1 hour; and A's booked-hour rate is $20 and B's $15. Then A's compensation would be $80 and B's $30, for a total of $110. The figures for A and B are calculated as follows. A put in two-thirds of the total amount of time that it took to complete the job, and so he is credited with two-thirds of the booked hours. That is 4 hours, and when multiplied by $20 per booked hour yields $80. B put in one-third of the time, so he is credited with one-third of the booked hours, which is 2 hours, which when multiplied by $15 is $30. The customer would be charged 6 hours times some hourly rate, plus the cost of the materials used in the repair. Suppose the hourly rate is $40. Then the labor component of the price to the customer would be $240 ($40 × 6), and the team would have received 46 percent ($110 ÷ $240) of that price. The faster the team works, the more it earns per number of hours, since its commission is based not on the total number of hours it puts in on a job but on the number of booked hours times each team member's booked-hour rate. That is how commissions work; they are decoupled from actual time worked. The percentage rate is implicit in Sterling's method of compensation. It is equivalent to paying the team a percentage (46 percent in our example) of the labor component of the price of their service to the customer.

Notice how closely this method of compensation resembles our example of the two real estate brokers who work

as a team and split the commission two-thirds one-third on the basis of their relative time. It is because the mechanics work in teams, with members making different contributions of time and skill, that it becomes necessary to allocate the commission. The fact that the time they put in is a factor in divvying up the commission no more alters the commission character of their compensation than in the broker case. If a team is paid a commission, the commission has to be divided between them somehow, and the method chosen for doing this doesn't alter the character of the compensation as a commission.

The only differences between our case and the brokerage example are, first, that there is an additional weighting, by quality, in our case, and, second, that the commission in the real estate example is on the full price of the good sold (the house), whereas in our case it is on only part of the price—the price of the labor that goes into the repair. There is also a materials costs, and the mechanics do not share in the part of the price that covers those costs.

The first difference is irrelevant—but so is the second. Suppose a seller pays shipping costs and adds them to his price to the buyer, but the seller pays his salesmen commissions based on the price minus those costs; it would still be a bona fide commission system of compensation.

To try to distinguish the system in this case from the brokerage example would complicate the law without furthering the purposes of the overtime provision. The purposes are to spread work in order to reduce unemployment, to discourage (by increasing the cost to the employer) a degree of overtime that might impair workers' health or safety, and to increase the welfare of low-paid workers. *Mechmet v. Four Seasons Hotels, Ltd.*, *supra*, 825 F.2d at 1175-76. None of these purposes is engaged by this case. Both named plaintiffs earn more than $60,000 a year; their

booked-hour rates are $21.50 and $18.50 and their actual hourly rates considerably higher, as in our example. Skilled workers at their level are scarce, so that forcing employers to pay them more for overtime would be unlikely to induce employers to hire many additional mechanics rather than reluctantly pay the overtime premium to the ones they have. And finally, as we have emphasized, there is no evidence that the members of the plaintiff class work more than 2000 hours a year, which would be the equivalent of 40 hours a week with two weeks of annual vacation. Remember that unlike hourly workers they are paid only when they work; and if they have a slow week they will work fewer than 40 hours and so they will have to work more in a fast week in order to work 2000 hours a year.

The plaintiffs argue that their class includes workers who are paid much less than they. But if so and those workers feel aggrieved, it is odd that none of them is a class representative.

Although the mechanics are paid by the job, this is not piecework (which is not exempt from the overtime provision, 29 U.S.C. § 207(g); *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947); *McLaughlin v. Seafood, Inc.*, 861 F.2d 450, 452-53 (5th Cir. 1988)), any more than selling real estate is piecework. You can spend 40 hours a week making quilts, and be paid by the quilt, and you won't be in the position of having to work overtime one week in order to make up slack time in the previous week. But if you're paid by the sale, you can't count on working steadily the same amount of time week after week, because sales depend on buyers' decisions, which are unpredictable; in the present case sales depend on the flow of wounded cars into each of Sterling's local repair shops.

The system of compensation used by Sterling is industry-wide, and of long standing. Department of Labor, Wage & Hour Division, *supra*, § 21h04(d); "FLSA Compliance: Retail and Service Exemptions From Overtime Rules," *Payroll Practitioner's Monthly*, Oct. 2006; Ed Kovalchik, "Hourly Tech Pay Plans—Automobile Mechanics," *Ward's Dealer Business* (Apr. 1996), http://findarticles.com/p/articles/mi_m0FJN/is_n8_v30/ai_18728424. It is possible for an entire industry to be in violation of the Fair Labor Standards Act for a long time without the Labor Department noticing. But a more plausible hypothesis is that the auto repair industry has been left alone because the character of its compensation system has been recognized for what it is—a bona fide commission system.

AFFIRMED.

A true Copy:

      Teste:

                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*