PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 09-3545

————

ADRIAN E. PARKER, Individually
and on behalf of all others similarly situated

v.

NUTRISYSTEM, INC.

DELORIS WYNN,
Administratrix of the Estate of Adrian E. Parker;
DONALD J. WILSON; FRANK L. STEPHENS, IV;
MONICA THOMPSON; SENYA SAUNDERS,

Appellants

(Pursuant to Rule 12(a), Fed. R. App. P.)
(Pursuant to Rule 43(a)(1), Fed. R. App. P.)

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cv-01508)
District Judge:  Honorable Harvey Bartle, III

————

Argued June 21, 2010
Before: SMITH, FISHER and COWEN, *Circuit Judges*.

(Filed: September 7, 2010)

Shanon J. Carson (Argued)
Ellen T. Noteware
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103

R. Andrew Santillo
Peter D. Winebrake
The Winebrake Law Firm
715 Twining Office Center
Twining Office Center, Suite 211
Dresher, PA 19025
        *Counsel for Appellants*

Sarah E. Bouchard (Argued)
Katherine E. Kenny
Jonathan S. Krause
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
        *Counsel for Appellee*

Paul L. Frieden
Laura Moskowitz (Argued)

United States Department of Labor
Office of the Solicitor
N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210
    *Counsel for Amicus Curiae,*
    *Secretary of Labor*

David A. Borgen
Goldstein, Demchak, Baller, Borgen & Dardarian
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
    *Counsel for Amicus Curiae,*
    *National Employment Lawyers Association.,*
    *Comité De Apoyo A Los Trabajadores*
    *Agrícolas, Community Legal Services,*
    *Cornell Labor Law Clinic, Friends of*
    *Farmworkers, Juntos, National Lawyers*
    *Guild Labor and Employment Committee,*
    *Southern Poverty Law Center, The Sugar*
    *Law Center, and Working Hands Legal Clinic*

––––––

OPINION OF THE COURT

––––––

FISHER, *Circuit Judge*.

This appeal arises from an order of the District Court, entered July 30, 2009, granting Appellee NutriSystem, Inc.'s

("NutriSystem") motion for summary judgment on Appellants' claims for past overtime payments based on violations of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201, *et seq.*[1] We must decide whether the District Court correctly concluded that NutriSystem's method of compensating its call-center employees constituted a commission under the FLSA so that Nutrisystem was exempt from paying Appellants overtime. For the reasons articulated below, we agree with the District Court that NutriSystem's compensation plan qualified as a commission and affirm its ruling.

I.

A.

The facts in this case are undisputed. NutriSystem is a provider of weight loss and weight management products. It markets and sells its prepackaged meals directly to customers for personal use. Its core product is a 28-day meal program. NutriSystem offers several varieties of the meal plan depending on customers' needs. In 2008, NutriSystem offered plans under two methods of shipping, regular or auto-ship, at different prices: a men's regular 28-day plan for $371.50, or $319.95; a women's regular 28-day meal plan for $342.36, or $293.72; a women's or men's silver 28-day plan (for older customers) for $342.36, or $293.72; a women's or men's diabetic-friendly 28-day plan for $342.36, or $293.72; and a women's or men's

---

[1] Deloris Wynn has been substituted as lead plaintiff pursuant to Federal Rule of Appellate Procedure 43(a)(1).

4

vegetarian 28-day plan for $342.36, or $293.72. Under the regular method, the customer receives only a 28-day shipment and then must affirmatively request additional shipments. Under the auto-ship method, a customer signs up to receive automatic monthly shipments of food and is charged by NutriSystem on a monthly basis. Customers are permitted to cancel the auto-ship plan after the first month.

NutriSystem customers typically place their orders via telephone or the internet. The phone calls are fielded at a NutriSystem call center in Horsham, Pennsylvania, which employs approximately 230 sales associates. Under a NutriSystem sales policy, sales associates are prohibited from remaining idle for more than five minutes while awaiting an inbound call. Before the five-minute mark is reached, an associate must originate an outbound sales call. These calls are generally to people who filled out profiles on the company website but failed to place an order or to customers who previously placed orders but whose credit cards were declined.

NutriSystem sales associates are assigned to six different work shifts: 7:00 a.m. to 3:30 p.m., 9:00 a.m. to 5:30 p.m., 11:00 a.m. to 7:30 p.m., 1:30 p.m. to 10:00 p.m., 3:30 p.m. to 12:00 a.m., and 11:00 p.m. to 7:30 a.m. (the "overnight shift"). Since January 2007, sales associates, except those working the overnight shift, have been permitted to work extra hours during a week if in the preceding week they exceeded the average "sales dollars per call," a figure the company calculates based on the revenue the sales associates generate and the calls they make each week.

In March 2005, NutriSystem implemented the compensation scheme for sales associates at issue in this case. Under the plan, sales associates receive the greater of either their hourly pay or their flat-rate payments per sale for each pay period. The hourly rate is $10 per hour for the first forty hours per week, and $15 per hour for overtime. The flat rates per sale are $18 for each 28-day program sold via an incoming call during daytime hours, $25 for each 28-day program sold on an incoming call during evening or weekend hours, and $40 for each 28-day program sold on an outbound call or during the overnight shift. These flat rates do not vary based on the cost of the meal plan to the consumer.

The majority of the sales associates are compensated based on these flat rates, not their hourly earnings. Under the compensation plan, sales associates do not receive overtime compensation when they are paid the flat rates for the sales made. There is no change to the flat rates when a sales associate works more than forty hours in one week.

B.

Adrian Parker, a former sales associate, sued NutriSystem for violations of the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. § 333.101, *et seq.*, on behalf of himself and others similarly situated (collectively "Appellants"). Parker asserted his FLSA claim as a collective action under 29 U.S.C. § 216(b) and his PMWA claim as a class action under Federal Rule of Civil Procedure 23.

In a July 25, 2008 order, the District Court declined to exercise supplemental jurisdiction over Parker's PMWA class action claim.[2] On September 26, 2008, the District Court conditionally granted Parker's motion to proceed as a collective action for his FLSA claims, and seventy-eight plaintiffs opted in.

NutriSystem moved for summary judgment against lead plaintiff Parker and the first four opt-in plaintiffs in the FLSA collective action. NutriSystem informed the District Court it would move for summary judgment against the remaining plaintiffs if the court found in its favor. Parker also moved for summary judgment against NutriSystem. On July 30, 2009, the District Court granted NutriSystem's motion for summary judgment and denied Parker's.

Appellants filed a timely notice of appeal. The Secretary of Labor has filed a brief as *amicus curiae* in support of Appellants' position.

---

[2] Appellants argue that the District Court abused its discretion in declining to exercise supplemental jurisdiction over the state class action claims. Because we affirm the District Court's grant of summary judgment in favor of NutriSystem as to the federal claims against it, we need not address the propriety of the District Court's decision with regard to its jurisdiction over the state law claims. The District Court was free to decline to exercise supplemental jurisdiction because it "dismissed all claims over which it [had] original jurisdiction." 28 U.S.C. § 1367(c)(3).

## II.

The District Court had jurisdiction over Appellants' FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). We have appellate jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *Levy v. Sterling Holding Co.*, 544 F.3d 493, 501 (3d Cir. 2008). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

The dispute in this case centers on the limited issue of whether NutriSystem's method of compensating its sales associates represents "commissions on goods or services," which turns on whether the "earnings result[] from the application of a bona fide commission rate." 29 U.S.C. § 207(i). We conclude that NutriSystem's compensation plan establishes a "bona fide commission rate" and is therefore a "commission" under the FLSA.

### A. Background

The FLSA requires that employers pay their employees one and one-half times their regular rate of pay for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). The Act contains an exception to the overtime requirements for

8

employees working in retail or service establishments. Section 7(i), the "retail commission exception," provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i). The employer has the burden of demonstrating that it is eligible for the retail commission exception. *See Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 295-96 (1959); *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 183 (3d Cir. 2000).

Here, the parties agree that under § 7(i), NutriSystem qualifies as a retail establishment and that its sales associates' regular rate of pay is more than one and one-half times the

federal minimum wage; the question we face is the meaning of "commissions on goods or services."

"'In interpreting a statute, the Court looks first to the statute's plain meaning and, if the statutory language is clear and unambiguous, the inquiry comes to an end.'" *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history. *See AT&T, Inc. v. F.C.C.*, 582 F.3d 490, 498 (3d Cir. 2009).

In determining whether language is unambiguous, we "read the statute in its ordinary and natural sense." *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3d Cir. 2009). A provision is ambiguous only where the disputed language is "reasonably susceptible of different interpretations." *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005).

The FLSA does not define the term "commission." The plain meaning of the term, according to Black's Law Dictionary, is "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction." Black's Law Dictionary 306 (9th ed. 2009). Section 7(i), however, requires that in order to be a commission, the fee paid to the employee must be based on a "bona fide commission rate." The "bona fide commission rate" language is imprecise and capable of ambiguity. Therefore, we hold the plain language of § 7(i) does not provide sufficient guidance to govern the application of the statute in this case. *Cf.*

10

*Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987) (finding that "[i]t would not be sensible to try to decide [a] case on the basis of dictionary meanings, or for that matter common legal usages, of the word 'commission.'").

Because we cannot unlock the meaning of "commission" based on the plain language in this context, we consider legislative history and statutory purpose. *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009) ("'Where the statutory language does not express Congress's intent unequivocally, a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose.'") (quoting *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000)).

Further, in light of this statutory ambiguity we must examine the Department of Labor's (the "Department") various interpretations of the statute to determine whether the Department is entitled to deference. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1984). "Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Rather, interpretations contained in formats such as opinion letters are "entitled to respect" based on an agency interpretation's power to persuade. *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (We consider "the thoroughness evident in [the interpretation's] consideration, the validity of [the interpretation's] reasoning, [the interpretation's] consistency

11

with earlier and later pronouncements, and all those factors which give [the interpretation] power to persuade, if lacking power to control."")); *see also Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 253 (3d Cir. 2005). In this case, we examine the various Department opinion letters addressing the meaning of commission. Both sides point to court decisions that, they claim, support their interpretation of the term "commission" under section 7(i).

Appellants submit that to qualify as a commission under § 7(i), the fee paid to an employee must be based on the final cost to the consumer and that NutriSystem's plan, therefore, would not qualify as a commission because the flat rate payments are based not on the cost to the consumer, but on both the time the sale was consummated and whether it was the result of an incoming or outgoing call. The Department supports Appellants' position and argues that we should afford *Skidmore* deference to its consistent view expressed in various opinion letters that to qualify as a commission for purposes of § 7(i) the payment must be "linked to the cost of the product sold or services provided to the customer." (Dep't of Labor Br. at 21.) NutriSystem, on the other hand, asserts that its compensation scheme qualifies as commission because the sales associates' pay varies across pay periods, their compensation was not linked to the number of hours worked, and the payments were proportional to the cost to the consumer.

B. Legislative History

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours,

12

'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). The Act was designed "to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" *Id.* (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)).

The legislative history of the overtime compensation provisions of the FLSA reveal a threefold purpose underlying them: (1) to prevent workers who, perhaps out of desperation, are willing to work abnormally long hours from taking jobs away from workers who prefer shorter hours, including union members; (2) to spread available work among a larger number of workers and thereby reduce unemployment; and (3) to compensate overtime workers for the increased risk of workplace accidents they might face from exhaustion or overexertion. *Mechmet*, 825 F.2d at 1175-76 (7th Cir. 1987) (citing H.R. Rep. No. 1452, 75th Cong., 1st Sess. (1937); S. Rep. No. 884, 75th Cong., 1st Sess. (1937)).

C. Department of Labor Interpretations

The Department's regulations specifically elaborate on the purpose of § 7(i):

Section 7(i) was enacted to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or

service establishment paid wholly or in greater part on the basis of commissions. These employees are generally employed in so-called "big ticket" departments and those establishments or parts of establishments where commission methods of payment traditionally have been used, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders. There may be other segments in retailing where the proportionate amount of commission payments would be great enough for employees employed in such segments to come within the exemption. Each such situation will be examined, where exemption is claimed, to make certain the employees treated as exempt from overtime compensation under section 7(i) are properly within the statutory exclusion.

29 C.F.R. § 779.414.

Although the Department has not defined "commission" in its regulations,[3] the Wage and Hour Division of the

_____

[3] While the Department of Labor's regulations do not define commission, they do specify what a bona fide commission is not:

14

Department of Labor has attempted to explain the meaning of the term "commission" under the retail commission exception through various opinion letters. The following three letters are most relevant to our analysis.

First, the Department opined that alarm system installers who were compensated based on a percentage of the sales price of the alarm systems they installed were paid a commission. However, installers who were paid a flat fee per installation were not paid a commission and did not fall within the scope of

A commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee). Another example of a commission plan which would not be considered as bona fide is one in which the employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment or department can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota.

29 C.F.R. § 779.416(c).

section 7(i).  Dep't of Labor Op. Ltr., 1996 WL 1031770
(Apr. 3, 1996).  The Department's letter does not elaborate on
whether the installers who were paid a percentage of the sales
price also had the ability to sell upgrades to alarm systems on-
site, thereby increasing their commissions by increasing the cost
to the consumer.  Put differently, it is unclear from the letter
whether these installers can be considered "in sales."   The
Department based its determination of what was a "commission"
solely on the fact that one compensation method was based on
a percentage of cost to the consumer and the other was a flat rate
with no connection to the cost to the consumer.

In a second letter concerning health club instructional
employees, the Department was unable to reach an opinion
because the employees – membership sales associates and
personal trainers – appeared to be compensated under more than
one method.  Dep't of Labor Op. Ltr., 2005 WL 3308624 (Nov.
14, 2005).  The Department did offer the employer the following
guidance:

> Flat fees "paid without regard to the value
> of the service performed do not represent
> 'commissions on goods or services' for purposes
> of Sec[tion] 7(i)."  Field Operations Handbook,
> 21h04(c) . . .  Rather, employees paid a flat fee
> "are considered to be compensated on a piece rate
> basis and not on the basis of commissions.
> Commissions, for purposes of Sec[tion] 7(i),
> usually denotes a percentage of the amount of
> monies paid out or received." . . .  Moreover,
> instructional employees paid a flat fee per lesson

16

or session taught appear likely to earn the same amount each week, contrary to the requirements of 29 C.F.R. § 779.416.

*Id.*

In the third letter, concerning automobile detailers and painters, the Department relied on the same above-quoted passage from the Wage and Hour Field Operations Handbook to determine the definition of commission. Dep't of Labor Op. Ltr., 2006 WL 4512957 (June 29, 2006). The detailers and painters in this letter were paid according to how many vehicles they serviced each week. Each vehicle was assigned a predetermined number of "flag hours" based on the employer's expectation of how long the job would take to complete. Each detailer or painter was assigned a "flag rate" of pay based on his or her experience and expertise. The detailers and painters were paid by multiplying their flag rate by the flag hours for each vehicle they serviced, regardless of how long it actually took them to complete a job. Under this system, the employees were encouraged to work rapidly and efficiently, and their pay varied from week to week. In its letter, the Department concluded that this payment arrangement was a commission because "the amount of the payment appears to be related to the value of the service performed." *Id.*

D. Relevant Case Law

This Court has not weighed in on the question of what qualifies as a commission under § 7(i). Decisions on the meaning of "commission" under the retail commission

17

exception are, in fact, sparse. *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (noting that the meaning of commission "is an issue that finds little illumination from the sparse case law and the vague references in statutes and regulations."). There do not appear to be decisions from other circuits that have considered whether compensating call center employees with flat rate payments qualifies as bona fide commissions under the retail commission exception. Of the limited case law on this issue, we find the following case most instructive.

In *Yi v. Sterling Collision Centers*, 480 F.3d 505 (7th Cir. 2007), the defendants paid the plaintiff auto mechanics under the following scheme:

> [Defendant Sterling] calculates the number of hours normally required to do a given type of repair (these are called "booked hours") and multiplies that number by a dollar figure. The product of this multiplication is the labor price of the repair to the customer. Sterling adds material costs to the labor price to come up with a final price. A team of mechanics is then assigned to the job. Each member of the team keeps track of the hours he works on the job. When it's completed and the hours of the team members are added up, Sterling determines each member's compensation by multiplying (1) the number of booked hours for the job by (2) the ratio of the team member's actual hours worked to the total hours worked by the team, and then by (3) a

18

wage, per booked (not actually worked) hour, based on the skill or quality of the individual team member.

*Id.* at 509.

In considering whether that system of compensation was a commission system within the meaning of the statute, Judge Posner, writing for the Seventh Circuit, stated:

[t]he essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold. Although his income is likely to be influenced by the number of hours a week that he works, the relation is unlikely to be a regular one. In one week business may be slow; he may make no sales and thus have no income for that week. The next week business may pick up and by working overtime that week he may be able to make up the income he lost because of slack business the previous week. Over a year his hours of work may be similar to those of regular hourly employees. So if he had to be paid overtime, his annual income would be higher than theirs even though he hadn't worked more hours over the course of the year than they had. We take this to be the rationale for the commission exemption from the FLSA's overtime provision.

19

*Id.* at 508. The Seventh Circuit noted that a commission can be based on the full price of the good or service sold or on only part of the price, for example the price of the labor that goes into the good or service. *Id.* at 509-10. The court in *Yi* concluded that the compensation plan at issue was indeed a commission under § 7(i).

E. NutriSystem's Compensation Plan and Section 7(i)

1. *Skidmore* Deference

The Department argues that we should afford *Skidmore* deference to the consistent view expressed in its various opinion letters that to qualify as a commission for purposes of § 7(i), the payment must be "linked to the cost of the product sold or services provided to the customer." (Dep't of Labor Br. at 21.) Put differently, to qualify as a commission, an increase in the cost to the consumer must result in a corresponding increase to the amount of the payment made to the employee. (*See id.* at 30 ("Had, for instance, NutriSystem utilized fixed payments that varied according to the differences in the cost to the customer, this would have constituted a commission under section 7(i).").)

Although the Department may have more "specialized experience" than we do in the day-to-day administration of the FLSA, we do not find that the opinion letters at issue here provide sufficiently thorough reasoning, consistency, or factual similarities to the instant case to warrant deference. *See Skidmore*, 323 U.S. at 140.

20

The work performed by the NutriSystem sales associates is distinguishable from the alarm installer who was paid a flat fee per installation. There is no indication in the Department's letter that the alarm installer paid a flat fee was responsible for selling the alarm; rather, he or she was only "delivering" the product to the consumer. Nothing in the letter suggests that there was an opportunity for the installer to increase the sales of his employer.

At argument, the Department pointed to the health club employee letter as being factually closest and most instructive to the instant case. That letter, however, did not formally express an opinion on the compensation scheme because of the lack of information provided by the employer. Rather, the letter provided only broad, general guidance by citing to the Department's Wage and Hour Field Operations Handbook. Dep't of Labor Op. Ltr., 2005 WL 3308624 (Nov. 14, 2005). This broad guidance, which was not applied to the facts in the letter, is insufficiently "thorough" to persuade us that a commission must vary based on the end cost to consumers. Further, the letter's guidance does not explicitly require that an increase in the cost to the consumer result in an increase in the commission paid to the employee – the requirement the Department urges us to adopt. Rather, it states that "flat fees paid without regard to the value of the service performed do not represent commissions on goods or services for purposes of Sec[tion] 7(i)," and "[c]ommissions, for purposes of Sec[tion] 7(i), usually denote[] a *percentage* of the amount of monies paid out or received." *Id.* (internal quotations and citations omitted) (emphasis in original). This lack of a consistent definition of

21

commission further weighs against the persuasiveness of the Department's opinion letters. *See Skidmore*, 323 U.S. at 140.

Unlike the compensation plans of the opinion letters, NutriSystem's payments to employees are based on consumer preference and the ability of the sales associate to persuade a customer to purchase a meal plan. Unlike the alarm installer who is paid a flat fee per installation, the number of calls the sales associate makes plays no part in determining the number of additional payments he receives. The number of calls only increases an associate's chances of making a sale and receiving the additional payment. Rather, the external factors of sales ability and customer preference, which are not present in the Department's opinion letters discussed *supra*, dictate whether NutriSystem's sales associates are paid the additional compensation.

In sum, we do not find the Department's factually distinguishable opinion letters and broad general guidance sufficiently thorough or consistent to warrant deference in this case. *See id.*

2. Percentage of Cost to Consumer

Further, we decline to adopt a test that requires a commission, under § 7(i), to be strictly based on a percentage of the end cost to the consumer. While the various definitions discussed *supra* suggest that a commission is typically calculated as a percentage of sales price – for example a real estate broker receives 10% of a house's sale price or a paint salesmen receives 20% of his sales – both the Department and

22

other courts have recognized that this strict percentage relationship is not a requirement for a commission scheme under § 7(i). *See* Dep't of Labor Op. Ltr., 2005 WL 3308624 (Nov. 14, 2005) ("Commissions, for purposes of Sec[tion] 7(i), *usually* denotes a percentage.") (emphasis added); *Yi*, 480 F.3d at 508. Therefore, the fact that NutriSystem's plan is not calculated strictly as a percentage of sale price does not disqualify it from being a commission under § 7(i).[4]

### 3. Proportionality and Sales

A number of factors persuade us that NutriSystem's compensation plan establishes a "bona fide commission rate" and is therefore a "commission" under the FLSA. We conclude that when the flat-rate payments made to an employee based on that employee's sales are proportionally related to the charges passed on to the consumer, the payments can be considered a bona fide commission rate for the purposes of § 7(i).

First, we agree with the District Court that the payments made to NutriSystem's sales associates are sufficiently

---

[4] The Department's own regulations provide guidance on what is *not* a bona fide commission plan. 29 C.F.R. § 779.416(c). NutriSystem's plan does not fall into either of the examples given in that regulation, and neither Appellants nor the Department argue that it does. NutriSystem's employees' pay can vary greatly across pay periods and the plan is not based on the sales NutriSystem expects to make as a whole, but rather is tied precisely to the number of sales each sales associate closes.

23

proportional to the cost to the consumer to qualify as commission under section 7(i). *See*, *e.g.*, *Yi*, 480 F.3d at 508; Dep't of Labor Op. Ltr., 2006 WL 4512957 (June 29, 2006). There is only a small difference between the absolute dollar value of the three flat-rate fees paid to sales associates ($18.00, $25.00, and $40.00). The variance in the flat-rate fee as a percentage of the cost to the consumer, which ranges from 5%-14%, is also relatively small. *See* Appendix I. These relatively small differences support the proposition that proportionality to the cost to the consumer exists in this case. The District Court offered an example in defining proportionality, which we find helpful: "proportionality would not exist if an employee were paid the same dollar amount for selling a $10 ring as a $1,000,000 ring." This is plainly not the case here, as the differences in the costs of the meal plans are relatively small, with four of the five meal plans costing the same, $342.36. The men's plan is slightly more expensive, $371.50, because it contains more food. Customers can receive a $50 discount on all five products by selecting the auto-ship option.[5]

Second, it is persuasive that NutriSystem's plan "bases compensation on sales," just as Judge Posner described in *Yi*. 480 F.3d at 510. Under the plan, a flat rate fee is not paid unless a sales associate completes a sale. NutriSystem's flat rate

---

[5] There was discussion at argument dealing with the boundaries of proportionality. We, like the District Court, need not define the outer limits of proportionality here as we are satisfied that it exists in this case.

payment is tied to both the time the sale is made and whether it is based on an incoming or outgoing call, rather than being a percentage of the cost to the consumer. The amount of the payment is based on the value NutriSystem was receiving from the sales associates' work. Under this plan, NutriSystem creates an incentive for sales associates to be actively making outgoing calls and to work less desirable hours, thus allowing NutriSystem to operate at peak efficiency around the clock. The sales associates' compensation is also "decoupled from actual time worked," a characteristic both the Seventh Circuit and the Department identified as a hallmark of "how commissions work." *Id.* at 509; *see* Dep't of Labor Op. Ltr., 2005 WL 3308624 (Nov. 14, 2005) ("The whole premise behind earning a commission is that the amount of sales would increase the rate of pay.") (internal citation omitted).

Third, from a policy standpoint it is reasonable to permit NutriSystem to offer different commissions depending on the time of the sale and whether the sale was the result of an incoming or outgoing call. This encourages sales staff to take undesirable shifts and to work harder to close a sale on outgoing calls. Additionally, NutriSystem offers various sales and promotions, including the auto-ship program. Had NutriSystem based commission purely as a percentage of the cost of the goods to consumers, it would have created a disincentive for a sales associate to encourage consumers to take advantage of the discounts that result from the auto-ship method. For example, had NutriSystem declared a 7% commission on all products sold, a sales associate would earn a $26.01 commission on a men's plan under the regular shipping method but only a $22.04 commission under the auto-ship method. NutriSystem offers the

25

auto-ship method at a discount because the company believes in the end, this shipping method will generate the company greater revenue. A sales associate, however, would prefer to sell a consumer a meal plan under the regular shipping method because the associate receives a large commission. NutriSystem's plan eliminates this disincentive by providing associates with a flat rate commission not directly tied to the end cost to consumers.

Finally, NutriSystem's plan does not offend the purposes of the FLSA and the overtime provisions discussed *supra* in *Mechmet*, 825 F.2d at 1175-76, and *Yi*, 480 F.3d at 510. First, the Appellants' income in the years they worked at NutriSystem ranged from approximately $40,000 to over $80,000, and thus they were not the lower-income type employees contemplated to be protected by the overtime provisions. Second, NutriSystem employees must achieve certain sales goals to work hours beyond their scheduled eight-hour shifts. Forcing NutriSystem to pay overtime is unlikely to induce the hiring of additional sales associates because the only sales associates working an excess of forty hours per week are the top sales associates. Third, high-performing call center workers could work more than forty hours a week, the health risks or accidents that can occur due to fatigue from long hours are generally not present for call center employees as compared to manual laborers, and thus the overtime premium is not needed to compensate for an increase in danger from working when tired.

IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to NutriSystem and denial of summary judgment to the Appellants.

**Appendix I**

| | Product Cost | | Commission Percentage of Product Price | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Incoming Call - Business Hours (Flat-Rate $18) | | Incoming Call - Evening/Weekends (Flat-Rate $25) | | Outbound Call or Overnight Shift (Flat-Rate$40) | |
| NutriSystem Plan | Regular | Auto-Ship | Regular | Auto-Ship | Regular | Auto-Ship | Regular | Auto-Ship |
| Women's Regular | $342.36 | $293.72 | 5.26% | 6.13% | 7.30% | 8.51% | 11.68% | 13.62% |
| Men's Regular | $371.50 | $319.95 | 4.85% | 5.63% | 6.73% | 7.81% | 10.77% | 12.50% |
| Silver | $342.36 | $293.72 | 5.26% | 6.13% | 7.30% | 8.51% | 11.68% | 13.62% |
| Diabetic-Friendly | $342.36 | $293.72 | 5.26% | 6.13% | 7.30% | 8.51% | 11.68% | 13.62% |
| Vegetarian | $342.36 | $293.72 | 5.26% | 6.13% | 7.30% | 8.51% | 11.68% | 13.62% |

*Parker, etc. v. NutriSystem, Inc.*, No. 09-3545

COWEN, <u>Circuit Judge</u>, dissenting

Unlike the majority, I would afford *Skidmore* deference to the Department's view that in order to constitute a commission for purposes of § 7(I), the amount of compensation paid to the employee must be proportionally related to the amount charged to the customer. Because NutriSystem failed to demonstrate the requisite proportionality, its compensation plan cannot be considered a bona fide commission plan under § 7(I).

As the majority recognizes, the Department has issued several opinion letters concerning the scope of the retail commission exemption. In the majority's view, these opinion letters fail to "provide sufficiently thorough reasoning, consistency, or factual similarities to the instant case to warrant deference." Maj. Typescript Op. at 20. I disagree, as in my view, the opinion letters clearly reflect the Department's consistent view that, in order to be considered a commission under § 7(I), there must be a degree of proportionality between the payment an employee receives and the costs passed down to the customer.

For instance, in the April 3, 1996, letter concerning alarm system installers, the Department explained that, if the installers "were to be compensated on a percentage of the sales price of the alarm systems they installed[, s]uch a method of payment would constitute payment on a commission basis;" but if the installers were "paid a flat fee per installation, [the Department] would not consider such a payment to be a commission payment." Dep't of Labor Op. Ltr., 1996 WL 1031770 (Apr. 3, 1996).

1

Similarly, in its subsequent letter about health club instructional employees, the Department made clear that, while instructors who were paid a percentage of the club's revenue per lesson would qualify for the exemption, instructors paid a flat fee per lesson would not because "[f]lat fees paid without regard to the value of the service performed do not represent 'commissions on goods or services' for purposes of [§] 7(I)." Dep't of Labor Op. Ltr., 2005 WL 3308624 (Nov. 14, 2005) (internal quotation marks and citations omitted). In that opinion letter, the Department went on to state that, in general, "employees paid a flat fee are considered to be compensated on a piece rate basis and not on the basis of commissions. Commissions, for purposes of [§] 7(I), usually denotes a *percentage* of the amount of monies paid out or received." *Id.*

In the third letter, the DOL determined that automobile detailers and painters who were paid under the flag-rate method were subject to the commission exemption because the flag hours that the employer set for each job corresponded to the labor hours ultimately charged to the customer. Dep't of Labor Op. Ltr., 2006 WL 4512957 (June 29, 2006).

Insofar as these opinion letters express the Department's consistent and reasonable position that § 7(I) requires a proportional relationship between employee compensation and customer costs, I would afford them a "measure of respect"

2

under *Skidmore*.[1]  *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008).

After declining to defer to the Department's interpretation of § 7(I), the majority nonetheless adopts a definition that is consistent with the Department's approach, holding that "when the flat-rate payments made to an employee based on that employee's sales are proportionally related to the charges passed on to the consumer, the payments can be considered a bona fide commission rate for the purposes of § 7(I)." Maj. Typescript Op. at 23. The majority then concludes that NutriSystem's compensation plan meets this definition because the payments made to its sales associates are "sufficiently proportional" to the cost to the consumer. *Id.* While I do not object to the majority's contention that § 7(I) requires a proportional relationship between employee compensation and customer costs, I cannot agree that NutriSystem has demonstrated such a proportional relationship here.

It is undisputed that NutriSystem's meal plans vary in price depending on the type of meal plan the customer chooses

---

[1]  *See also* 29 C.F.R. § 779.413(a)(4) (describing a "[s]traight commission" as "a flat percentage on each dollar of sales [the employee] makes"); U.S. Dep't of Labor, Glossary of Current Industrial Relations & Wage Terms, Bulletin No. 1438, at 15 (1965) (defining "commission earnings" as "[c]ompensation to salespeople based on a predetermined percentage of the value of sales"); U.S. Dept' of Labor, Glossary of Currently Used Wage Terms, Bulletin No. 983, at 4 (1950) (defining "commission earnings" as "compensation to sales personnel based on a percentage of value of sales").

3

and the length of the customer's commitment. It is likewise undisputed that the flat-rate fee paid to a sales associate does not vary depending on the type of plan the customer chooses or the length of the customer's commitment. NutriSystem clearly has not demonstrated that the flat-rate fees are proportionally related to the cost to the customer. While neither the plaintiffs nor the Department suggests that a commission must be based on a *strict* percentage of the end cost to the consumer, the flat-rate payments in this case do not correspond at all with the end cost to the consumer. Rather, the flat-rate payments are based on the time the sale is made and whether it results from an incoming or outgoing call. The fact that NutriSystem can perform math to portray its flat-rate fees as percentages of customer costs does not transform the fees into commissions.

Therefore I am unable to agree with the majority and would reverse and remand for further proceedings.