PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2297
_____

ALEXANDER ALLI; ELLIOT GRENADE,
on behalf of themselves and all others similarly situated

Appellants

v.

THOMAS DECKER, Field Office Director, Immigration &
Customs Enforcement,
U.S. Department of Homeland Security, in his official
capacity and his successors and assigns; JANET
NAPOLITANO, Secretary of Homeland Security, in her
official capacity and her successors and assigns; ERIC H.
HOLDER, JR., U.S. Attorney General, in his official capacity
and his successors and assigns; MARY SABOL, Prison
Warden, York County Prison Facility, in her official capacity
and her successors and assigns; JOHN P. TORRES, in his
official capacity as Acting Assistant Secretary of U.S.
Immigration and Customs Enforcement; WILLIAM
CAMPBELL, in his official capacity as Warden, Columbia
County Prison, Bloomsberg, Pennsylvania; JANINE
DONATE, in her official capacity as Warden, Lackawanna
County Prison, Scranton, Pennsylvania; WILLIAM F.
JURACKA, in his official capacity as Warden, Carbon
County Correctional Facility, Nesquehonin, Pennsylvania;
CRAIG A. LOWE, in his official capacity as Warden, Pike
County Correctional Facility, Lords Valley, Pennsylvania;
RUTH RUSH, in her official capacity as Warden, Snyder
County Prison, Selinsgrove, Pennsylvania; MICHAEL
ZENK, in his official capacity as Warden, CI Moshannon
Valley Correctional Institution, Philipsburg, Pennsylvania;
JERRY C. MARTINEZ, in his official capacity as Warden,
FCI Allenwood (Low), Allenwood, Pennsylvania; DAVID

EBBERT, in his official capacity as Warden, FCI Allenwood (Medium), Allenwood, Pennsylvania; R. MARTINEZ, in his official capacity as Warden, FCI Allenwood (High), Allenwood, Pennsylvania; THOMAS V. DURAN, in his official capacity as Warden, Clinton County Correctional Facility, McElhattan, Pennsylvania

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 4:09-cv-00698)
District Judge:  Honorable John E. Jones, III

_____

Argued January 24, 2011

_____

Before:  FUENTES and CHAGARES, <u>Circuit Judges</u>,
POLLAK, <u>District Judge</u>[*]

(Opinion filed: June 21, 2011)

Judy Rabinovitz (argued)
Michael Tan (argued)
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004

Thomas B. Schmidt, III
Pepper Hamilton
100 Market Street, P.O. Box 1181
Suite 200
Harrisburg , PA 17108-1181

        <u>Counsel for Appellants</u>

_____

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Theodore W. Atkinson (argued)
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

Nicole Prairie (argued)
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

    Counsel for Appellees

Craig Shagin
The Shagin Law Group, LLC
120 South Street
Harrisburg, PA 17101

    Counsel for Amicus Appellant Pennsylvania
    Immigration Resource Center and Legal Aid Society

_____

OPINION OF THE COURT
_____

POLLAK, District Judge

Appellants in this case seek to represent a putative class of aliens who are detained, pursuant to 8 U.S.C. § 1226(c), pending their removal proceedings. The class complaint, filed in the United States District Court for the Middle District of Pennsylvania, sought a declaratory judgment that the continued detention of the class members,

3

without bond hearings, violates the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment. The District Court denied the class certification motion and dismissed the class complaint, finding that 8 U.S.C. § 1252(f)(1) deprived the court of subject matter jurisdiction to entertain an application for declaratory relief on behalf of the plaintiff class. Section 1252(f)(1) precludes class actions that seek to "enjoin or restrain the operation of" several immigration statutes, including 8 U.S.C. § 1226(c). The District Court concluded that "restrain" encompasses declaratory relief. We reverse.

## I.

Appellants Alexander Alli and Elliot Grenade are lawful permanent residents whom the government deems removable from the United States as a result of past criminal convictions. *See* 8 U.S.C. § 1182(a)(2). Appellants were detained pursuant to 8 U.S.C. § 1226(c),[1] which provides that the Attorney General "shall take into custody any alien who . . . is deportable by reason of having committed" certain enumerated offenses.[2]

After Alli and Grenade had been detained for, respectively, 9 months and 20 months, they filed a combined habeas petition and civil complaint alleging that their continued detention violated the INA and the Due Process Clause. They sought, *inter alia*, an order directing the government to provide them with a bond hearing. In addition

---

[1] In the District Court, appellant Grenade argued that part of his detention could not be authorized by § 1226(c), and instead asserted that the detention came under § 1226(a), which allows the Attorney General to release a detained alien on bond. The dispute is not relevant to the issue we confront on appeal.

[2] The Homeland Security Act of 2002 transferred most immigration-related functions of the Attorney General— including the detention authority at issue in this case—to the Secretary of the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. For the sake of convenience, we use the term Attorney General as contained in the statutes.

to their individual claims, appellants sought to represent a class of lawful permanent residents residing in Pennsylvania or, in the alternative, in the Middle District of Pennsylvania, who had been or would be detained without hearing, pursuant to § 1226(c), for over six months. The putative class sought a declaration that the failure to afford such a hearing violates the INA and the Due Process Clause.

The District Court granted appellants' individual petitions but refused to consider their class claims, finding that 8 U.S.C. § 1252(f)(1) stripped it of jurisdiction to entertain a class action requesting declaratory relief. The government did not appeal the ruling on the individual petitions, but appellants sought review of the class decision.

## II.

### A.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2241. We exercise jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review over legal conclusions associated with orders dismissing claims for lack of subject matter jurisdiction. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).

Although not raised by either party, we briefly address a procedural wrinkle that implicates the mootness doctrine. The District Court denied appellants' motion for class certification on August 10, 2009. Dkt. 56. In the same order, the District Court dismissed the portions of appellants' complaint and habeas petition that sought class relief. But on January 26, 2010, the District Court ruled that both of appellants' detentions were unreasonably prolonged, and thus ordered individualized bond hearings for each appellant.[3] Dkt. 88. Accordingly, appellants no longer have a personal stake in the merits of the class claim. Nevertheless, because the denial of class certification occurred when appellants' individual claims were still live, their appeal is not moot. *See*

---

[3] Neither appellant actually received a bond hearing. Instead, Alli was immediately released on no bond and, after a conference with the District Court, the parties agreed to a form of conditional release for Grenade.

5

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) ("[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied."); *Rosetti v. Shalala*, 12 F.3d 1216, 1226 (3d Cir. 1993) ("[A] federal appellate court retains jurisdiction over a named plaintiff's challenge to a denial of class certification, even if the plaintiff has not maintained a personal stake in the outcome of the litigation since that decision."). We may therefore review the District Court's conclusion that § 1252(f)(1) deprived it of jurisdiction to certify appellants' class claim for declaratory relief.

**B.**

Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this sub-chapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.[4]

At issue in this case is whether the term "restrain," in § 1252(f)(1), encompasses, and thus bars, appellants' class

---

[4] Section 1252(f)(1) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546. "[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (emphasis omitted).

claim for declaratory relief regarding § 1226(c) [5] detention practices.[6]

The parties agree that use of the disjunctive "or" demands that "restrain" have some meaning other than "enjoin." *See Chalmers v. Shalala*, 23 F.3d 752, 755 (3d Cir. 1994) ("We see no basis to construe the disjunctive 'or' in any way other than its plain meaning . . . ."); *see also Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("[W]hen interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous.").

---

[5] 8 U.S.C. § 1226(c) is a "provision[] of part IV of this subchapter." Section 1252(f)(1) is in subchapter II of Chapter 12. Part IV of subchapter II, "Inspection, Apprehension, Examination, Exclusion, and Removal," includes 8 U.S.C. §§ 1221–1232.

[6] In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), the Supreme Court addressed the meaning of § 1252(f), albeit only in passing. The Court sought to determine the limits of § 1252(g), which restricts judicial review of the Attorney General's "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." The Ninth Circuit had found that § 1252(g) was limited by § 1252(f), which the Ninth Circuit had described as an affirmative grant of jurisdiction. In rejecting this conclusion, the Supreme Court's analysis of § 1252(f) was limited to a determination of whether § 1252(f) is a grant of or limit on federal court jurisdiction. In that regard, the Court observed that "[b]y its plain terms, and even by its title, that provision [§1252(f)] is nothing more or less than a limit on injunctive relief." *Id.* at 481. Thus, the *Reno* Court did not, as we must do here, address the scope of § 1252(f)(1), but instead simply determined that § 1252(f) is a limit on jurisdiction. We cannot, therefore, treat *Reno* as controlling on the more specific question of the meaning of "restrain."

But the parties dispute what we may and may not consider in construing the statute. Appellants argue that the meaning of "restrain" may be derived by reference to the statute's context (including neighboring provisions), while the government contends that resort to statutory context is only appropriate where the term in question is ambiguous. The government claims (and the District Court found) that "restrain" is not ambiguous, but merely broad, and thus that it is improper to consult the provision's context. *See* Appellees' Br. at 31 ("Ambiguity . . . may [not] be read into a statutory term or phrase simply because Congress used a different term or phrase in another part of the same statute."); *Alli v. Decker*, 644 F.Supp.2d 535, 549 (M.D. Pa. 2009) ("That Congress employed different language in another portion of the statute does not change [the] plain meaning [of 'restrain'].").

It is true that "[w]here the statutory language is unambiguous, the court should not consider statutory purpose or legislative history," *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010), and that "'the title of a statute . . . cannot limit the plain meaning of the text,'" *Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1988) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–29 (1947)). But neither the government nor the District Court has cited to any authority that requires a court to ignore other provisions within a statute when making the threshold ambiguity determination.[7] Indeed, "[t]he Supreme Court has

---

[7] For example, *Florida Department of Revenue. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008), did not, as the government contends, treat facial ambiguity as a prerequisite to contextual interpretation. In fact, the *Piccadilly* Court suggested that contextual interpretation is a permissible means of discerning ambiguity. *See id.* at 47 (considering, then rejecting, contextual arguments, and noting that "even if we were fully to accept Piccadilly's textual and contextual arguments, they would establish at most that the statutory language is ambiguous."). The District Court's citation to *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) is also inapposite. In *Kaufman*, we observed that "when the plain meaning cannot be derived, the provision at issue must be viewed in the context of the statute as a whole." *Id.* But it does not follow that a court may assess the

stated consistently that the text of a statute must be considered in the larger context or structure of the statute in which it is found." *United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context."). Accordingly, the District Court's approach to discerning the existence of ambiguity—an approach based on dictionary definitions— was insufficient. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context.").[8]

---

context of the statute *only* if "the plain meaning cannot be derived" in isolation.

[8] Thus it may be true that, as the District Court found, class declaratory relief would "restrain" the operation of the detention statutes if "restrain" were interpreted solely under its broad dictionary definition. *See, e.g.*, 2 Oxford English Dictionary 554 (Compact ed. 1971) (defining "restrain" as "[t]o check, hold back, or prevent (a person or thing) from some course of action . . . ."). But the Supreme Court has noted that

> [t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). We accordingly decline to confine ourselves to the dictionary definitions proffered by the government.

We therefore turn to the statutory context of § 1252(f)(1). A closely adjacent provision, § 1252(e)(1)(A), precludes courts from entering "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien . . . ." This provision is compelling evidence that Congress knew how to preclude declaratory relief, but chose not to in § 1252(f)(1). *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("'[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). In *Nken v. Holder*, the Supreme Court followed this presumption in interpreting § 1252(f)(2), immediately adjacent to the provision at issue here, and noted that the presumption was "particularly true . . . where [the] subsections . . . were enacted as part of a unified overhaul of judicial review procedures." *See Nken v. Holder*, 129 S.Ct. 1749, 1759 (2009).

Even if the contrast between "enjoin or restrain" in § 1252(f)(1) and "declaratory, injunctive, or other equitable relief" in § 1252(e)(1)(A) does not, by itself, demonstrate that "restrain" does not encompass declaratory relief, it at least underscores an ambiguity that encourages consideration of § 1252(f)(1)'s section heading. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are 'tools available for the resolution of a doubt about the meaning of a statute.'") (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (internal quotation marks omitted)). The title of § 1252(f), "Limit on injunctive relief," counsels in favor of interpreting "restrain" as referring to a form of injunctive relief. This reading is reinforced by the broader heading of § 1252(e)(1), "Limitations on relief." As noted above, § 1252(e)(1)—unlike § 1252(f)(1)—expressly bars jurisdiction over both injunctive and declaratory relief. We therefore read "Limit on injunctive relief" to mean what it says, and we conclude that "restrain" refers to one or more forms of temporary injunctive relief, such as a temporary restraining order or preliminary injunction.

In sum, viewing the provision in context and then taking into consideration the heading of the provision, it is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief. This moderate construction of "restrain" is in keeping with the Supreme Court's instruction that statutes limiting equitable relief are to be construed narrowly. *See Porter v. Warren Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."); *see also Samuels v. Mackell*, 401 U.S. 66, 70 (1971) ("[A] suit for declaratory judgment [is] . . . 'essentially an equitable cause of action' . . . ." (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943))).[9] Our conclusion is consistent with the Ninth Circuit's holding on the identical question, and with the First Circuit's conclusion in a slightly different context. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st Cir. 2003).[10]

**C.**

---

[9] Moreover, our reading is informed by the general rule that "the narrower construction of a jurisdiction-stripping provision is favored over the broader one." *Ana Int'l v. Way*, 393 F.3d 886, 891 (9th Cir. 2004) (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 480–82 (1999)).

[10] In *Arevalo*, the First Circuit was called upon to interpret § 1252(f)(2), which provides that "no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." Judge Selya, writing for the panel, ruled that "enjoin" in that provision does not encompass stays pending review of a final order of removal. Judge Selya's § 1252(f)(1) finding—that "restrain" in §1252(f)(1) refers to "temporary injunctive relief (such as stays)"—was thus primarily used to buttress his answer to the § 1252(f)(2) question, and it did not address the question of declaratory relief. Nevertheless, we find *Arevalo*'s reasoning persuasive on the issue we confront in this case.

11

The government contends that "restrain" should be construed to include declaratory relief because, in this context, such relief is the functional equivalent of injunctive relief. Specifically, the government contends that our interpretation leads to "an absurd result" by creating a "cause-of-action loophole that stops just short of ordering injunctive relief but establishes on a class-wide basis the right to such injunctive relief." Appellees' Br. at 29; *see also, e.g.*, *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)).

Under certain circumstances, declaratory relief has been deemed "functionally equivalent" to injunctive relief. For example, in *California v. Grace Brethren Church*, 457 U.S. 393 (1982), the Supreme Court assessed whether declaratory relief was permissible under the Tax Injunction Act, which provides that district courts "shall not *enjoin, suspend or restrain* the . . . collection of any tax under State law . . . ." 28 U.S.C. § 1341 (emphasis added). In ruling that the Act precludes both injunctive and declaratory relief, the Court observed that "the declaratory judgment 'procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended,'" *Grace Brethren Church*, 457 U.S. at 408 (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943)), and that a prohibition on declaratory relief was consistent with the "principal purpose" of the Act: "'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.'" *Id.* at 408 (quoting *Rosswell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981)).[11]

---

[11] As a textual matter, it is not clear that *Grace Brethren* compellingly supports the government's position that "restrain" includes declaratory relief. The Court did not expressly state whether "suspend" or "restrain"—or, perhaps, the combination of the two—encompassed declaratory relief. And to the extent the Court did tie its analysis to a particular term, it appears that the Court read "suspend"—which is absent from § 1252(f)(1)—to refer to declaratory relief. *See*

But declaratory relief will not always be the functional equivalent of injunctive relief. In *Steffel v. Thompson*, the Supreme Court noted that "'[t]he express purpose of the Federal Declaratory Judgment Act was to provide a milder alternative to the injunction remedy.'" 415 U.S. 452, 467 (1974) (quoting *Perez v. Ledesma*, 401 U.S. 82, 111 (1971) (Brennan, J., concurring in part and dissenting in part)). The *Steffel* Court noted that "[t]he only occasions where this Court has . . . found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications." *Id.* at 472; *see also id.* at 462 ("When no state proceeding is pending and thus considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief.").[12]

---

*Grace Brethren Church*, 457 U.S. at 408 ("[T]he Act divests the district court . . . of jurisdiction to take actions that 'suspend or restrain' the assessment and collection of state taxes. Because the declaratory judgment procedure may in every practical sense *suspend* collection of state taxes until the litigation is ended, the very language of the Act suggests that a federal court is prohibited from issuing declaratory relief . . . ."(emphasis added)); *see also Rodriguez*, 591 F.3d at 1119 ("[T]he conspicuous absence of suspend in [§ 1252(f)(1)] suggests that Congress intended Section 1252(f)'s scope to be more limited than the Tax Injunction and Johnson Acts.").

[12] The government relies on *National Union Fire Insurance Co. v. City Savings* to support its argument that declaratory and injunctive relief are, in this context, equivalent. Appellees' Br. at 39. In *National Union*, we held that a jurisdiction-stripping statute includes an implicit prohibition on declaratory relief. 28 F.3d 376, 389–90 (3d Cir. 1994). We further held that the prohibition was consistent with due process because it did not entirely preclude the opportunity to be heard, it merely delayed such opportunity. *Id.* at 390–91. We buttressed this ruling by citation to an analogous holding in *Bob Jones University v. Simon*, 416 U.S. 725 (1974)— which assessed a due process challenge to a statute stripping

13

The reasoning of *Steffel* significantly undermines the government's wholesale attempt to equate declaratory and injunctive relief, and it supports the conclusion that our reading of § 1252(f)(1) would not produce "an absurd result." The distinct purpose and effect of a declaration, as compared to an injunction, presents an entirely plausible basis upon which Congress might choose to bar one form of relief but not the other. Moreover, in this context a classwide declaration would not—indeed, by the plain terms of the statute, could not—form the basis for classwide injunctive relief. Though appellants do not dispute that class members could pursue individual injunctions after issuance of a classwide declaration, *see Steffel*, 415 U.S. at 461 n.11 ("[U]nder 28 U.S.C. § 2202 a declaratory judgment might serve as the basis for issuance of a later injunction . . . ."), such individual relief is expressly permitted under § 1252(f)(1).[13]

---

courts of jurisdiction to award *injunctive* relief—and we stated that *Bob Jones* was apposite because "'there is little practical difference between injunctive and declaratory relief.'" *Id.* at 391 n.17 (quoting *Grace Brethren Church*, 457 U.S. at 408). Thus, we found that the due process concerns raised by a statute barring declaratory relief were equivalent to the due process concerns raised by a statute barring injunctive relief.

But the government fails to explain why the remedial equivalency in *National Union* mandates a similar finding of equivalency in this case. We are concerned here with the practical effect of allowing declaratory relief, whereas *National Union* discussed the constitutional effect of barring declaratory relief. Moreover, we need only find that Congress had a plausible basis for finding that, in this context, declarations and injunctions are not equivalent. As discussed above, the distinct purposes and effects of the two remedies are a sufficient basis. We accordingly decline to read *National Union* as a categorical pronouncement of the equivalency of declaratory and injunctive relief.

[13] We recognize that the judiciary has "long presumed that officials of the Executive Branch will adhere to the law as declared by the court." *Comm. on Judiciary v. Miers*, 542

14

Finally, as one respected scholar has noted, allowing classwide declaratory relief would "facilitate the Supreme Court review that Congress apparently intended." *See* Gerald L. Neuman, *Federal Courts Issues in Immigration Law*, 78 TEX. L. REV. 1661, 1686–87 (2000); *see also* 8 U.S.C. § 1252(f)(1) (". . . no court (*other than the Supreme Court*) shall have jurisdiction or authority to enjoin or restrain . . . ." (emphasis added)). The Supreme Court could not exercise original jurisdiction over such a class action, and "[a]n appellate jurisdiction necessarily implies some judicial determination, some judgment, decree, or order of an inferior tribunal, from which an appeal could be taken." *The Alicia*, 74 U.S. (7 Wall.) 571 (1869). "If instead section 1252(f)(1) were interpreted as permitting classwide declaratory—but not injunctive—relief in the lower courts, there would be a justiciable class action that could be subjected to appellate review." Neuman, 78 TEX. L. REV. at 1686. Thus Professor Neuman has articulated an additional reason that our interpretation of "restrain" would not lead to an unreasonable result.

In summary, we conclude that construing § 1252(f)(1) to permit class declaratory relief would not produce an "absurd result." We accordingly decline the government's invitation to disregard the most natural reading of the statute.

\* \* \* \* \*

F.3d 909, 911 (D.C. Cir. 2008). But we also note that the Department of Justice has recently taken the position that, at least under certain circumstances, this presumption applies only after appellate review is exhausted. Defendant's Motion to Clarify at 4, Florida v. U.S. Dep't of Health and Human Services, No. 10-cv-91 (N.D. Fla. Feb. 17, 2011) ("[The] injunction-like effect of a declaratory judgment against defendants . . . would apply *after appellate review is exhausted*." (internal quotation marks omitted)). Though the district judge in that case rejected the government's view of the effect of the declaratory judgment, *see id.* ECF No. 167 at 12–13, we are satisfied, for the purposes of this case, that Congress had at least a plausible basis for believing that declaratory and injunctive relief would have different effects.

15

The problem in this case is to determine the scope of what Congress intended in using the word "restrain" in § 1252(f)(1). The government places particular emphasis on that term's dictionary definitions. We think that, in construing a statute, dictionary definitions may be helpful starting points, but over-reliance on dictionaries—to the exclusion of sources such as adjacent statutory provisions—can lead a court astray. As we have noted previously, *see supra* note 8, the Supreme Court has given prudent counsel: "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan*, 546 U.S. at 486. Accordingly, we (1) reverse the District Court's dismissal of those portions of appellants' amended habeas petition and civil complaint that sought class relief, (2) vacate the district court's denial of class certification, and (3) remand for further proceedings consistent with this opinion.

FUENTES, *Circuit Judge*, Dissenting.

The Majority concludes that, although 8 U.S.C. § 1252(f)(1) prohibits class action relief to "enjoin or restrain" immigration laws that regulate the detention of aliens convicted of crimes pending their removal, these jurisdictional limitations "do not encompass declaratory relief." Maj. Op. at 11. I disagree because a class action for declaratory relief has the effect of restraining the operation of laws, like 8 U.S.C. § 1226(c), that regulate pre-removal detention in immigration proceedings—precisely what the plain text of § 1252(f)(1) prohibits.

The statute at issue in this case provides as follows:

> *Regardless of the nature of the action or claim* or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1) (emphases added). Although this provision bars class action suits to "enjoin or restrain" the immigration laws that regulate the detention of aliens subject to removal, Alli argues that, by its plain language, § 1252(f)(1) contains no prohibition on *declaratory relief*. He points out that the text does not use the term "declaratory" and that the section is entitled "Limit on *Injunctive Relief*." I find these arguments unpersuasive. The real issue in this case is whether the word "restrain" bars a class claim for declaratory relief that would have the same practical effect as a class claim for injunctive relief. The Majority concludes that it does not because the word "restrain" refers to "temporary injunctive relief." Maj. Op. at 11. This is incompatible with the Majority's conclusion that the word "restrain" should have a meaning different from the word "enjoin." Maj. Op. at 8. In my view, while the term "enjoin" refers to injunctive relief—including the temporary kind—the

1

term "restrain" is a broad one that includes, among other things, declaratory relief. For this reason, I respectfully dissent.

The District Court rejected Alli's interpretation of § 1252(f)(1) and, for several reasons, I find its analysis persuasive. First, because we endeavor to interpret statutes according to their "ordinary meaning," *Chapman v. United States*, 500 U.S. 453, 462 (1991), I find dictionary definitions helpful. *See Massie v. United States Dep't of Housing and Urban Dev.*, 620 F.3d 340, 356 (3d Cir. 2010) (noting that the dictionary is the "proper starting place for ascertaining the plain meaning of words"). In this case, those definitions comport with common-sense understanding. The word "restrain" means "restrict, limit, confine," and "to hold back from action; keep in check or under control; repress." The American Heritage Dictionary of the English Language 1487 (4th ed. 2009); Random House Webster's Unabridged Dictionary 1642 (2d ed. 1998); The Compact Oxford English Dictionary 1573 (2d ed. 1989).

A class-wide declaratory judgment that aliens detained pursuant to § 1226(c) must receive an individualized hearing, as the Majority would allow, necessarily "restricts or limits" the Executive Branch's implementation of that statute. I find nothing ambiguous about this result.[1] As the government

---

[1] The Majority asserts that, because the "injunction-like effect of a declaratory judgment" action does not occur until after appellate review is exhausted, Congress could plausibly assume that the effect of a declaratory judgment is different from the effect of an injunction. Maj. Op. at 15 n.13. This is indicative of the Majority's penchant for elevating form over substance. The *timing* of a judgment's effect has no bearing on its *substance*. Moreover, even if the Majority is correct, a declaratory judgment can act to "restrain" the operation of § 1226(c) even if it differs in effect from an injunction. The question is not whether declaratory judgments and injunctions are equivalent; the question is whether a declaratory judgment acts to "restrain." As the Majority concedes, the judiciary presumes that officials of the Executive Branch adhere to our interpretations of the law. *Id.* (citing *Comm. on Judiciary v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008)). A declaratory

argues, the term "restrain" is simply broad: Congress was so concerned about judicial second-guessing of its policy that it used a broad term in order to prevent it. *See Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) ("Broad general language is not necessarily ambiguous when congressional objectives require broad terms."); *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 310 (3d Cir. 2010) ("As a general matter of statutory construction, a term in a statute is not ambiguous merely because it is broad in scope.").

Alli's class action petition for declaratory relief operates to "restrain" the operation of the law and is therefore barred by § 1252(f)(1). In *Younger v. Harris*, the Supreme Court held that a plaintiff generally cannot file an action in federal court to enjoin a pending state prosecution. 401 U.S. 37 (1971). A companion case, *Samuels v. Mackell*, 401 U.S. 66 (1971), recognized that allowing declaratory judgments in such cases would largely undermine *Younger*'s holding. The Supreme Court explained that "the propriety of declaratory and injunctive relief should be judged by essentially the same standards." *Id.* at 72. Applying this principle, the Supreme Court acknowledged that allowing declaratory judgments against pending state criminal prosecutions would (1) "serve as the basis for a subsequent injunction against those proceedings . . . and thus result in a clearly improper interference with the state proceedings," and (2) "even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone [would have] *virtually the same practical impact as a formal injunction . . . .*" *Id.* (emphasis added). In this way, it recognized that a declaratory judgment had the same practical limiting effect on a state prosecution as an injunction. *Id.* at 73. ("Ordinarily, however, the practical effect of the two forms of relief will be virtually identical . . . .")

I am not persuaded by the Majority's reliance on *Steffel v. Thompson*, 415 U.S. 452 (1974), to dismiss this authority. *Steffel* did not purport to overrule *Samuels*. It merely acknowledged that "different considerations enter into

judgment respecting an entire class of aliens surely "restrains," i.e., "limits," "restricts," the Executive Branch's exercise of discretion over the members of that class.

a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other." *Steffel*, 415 U.S. at 469. This is certainly true: the decision to grant declaratory judgment is a purely discretionary one. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995). The question is whether the considerations that led the Supreme Court to decide in *Samuels* that allowing declaratory judgments would undermine its holding in *Younger* are also applicable here. They are.

The concern in *Samuels* was that declaratory judgments would have the same practical effect of interfering with pending state proceedings as an injunction. Here, the concern is that a declaratory judgment has the same practical effect of interfering with pending immigration proceedings in immigration courts established by Congress and administered by the Executive branch. In both situations, a declaratory judgment will "serve as the basis for a subsequent injunction against those proceedings" and "even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone [would have] *virtually the same practical impact as a formal injunction . . . .*" *Samuels*, 401 U.S. at 72 (emphasis added). This consideration was not present in *Steffel*, which reaches the sensible conclusion that a declaratory judgment action can be filed when there is no pending proceeding to interfere with. 415 U.S. at 462.

Furthermore, the fact that district courts must consider a variety of factors in deciding between declaratory and injunctive relief is irrelevant to whether a declaratory judgment "restrains." The Majority implies that a declaratory judgment only restrains if it is the "functional equivalent" of an injunction. Maj. Op. at 13. In this case, I believe that the two forms of relief are functionally equivalent. But even if they are not—even if a declaratory judgment is a "milder" form of relief—a milder form of relief can still "limit," "restrict" or "keep [someone] back from action." In this light, I am unconvinced that a declaratory judgment does not "restrain" the operation of § 1226(c).

Indeed, if a declaratory judgment does not "restrain"— that is "restrict, limit, confine" or " keep . . . under control"

the operation of a law—then what does it do? At its inception, the concept of declaratory relief was controversial because of the concern that such judgments were merely impermissible advisory opinions. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure*, § 2753 (3d ed. 1998). These concerns remain real, which is why courts are required to ensure that a declaratory judgment action presents an actual controversy and not just an abstract question of law. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am.*, 257 F.2d 485, 489 (3d Cir. 1958). The "fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." *Id.* Here, it must be assumed that plaintiffs are seeking a determination of their legal rights as a class, not merely advice. Surely the determination of the legal rights of an entire class of aliens "restrains" the Executive Branch's legal authority over that class. *See California v. Grace Brethren Church*, 457 U.S. 393, 408 n.21 (1982) ("In enacting the Declaratory Judgment Act, Congress recognized the substantial effect declaratory relief would have on legal disputes.").

Second, the Supreme Court's interpretation of similar statutory phrases also supports my reading of § 1252(f)(1). The Tax Injunction Act states that district courts "shall not enjoin, suspend or restrain the . . . collection of any tax under State law . . . ." 28 U.S.C. § 1341. Recognizing that there is "little practical difference between injunctive and declaratory relief," the Supreme Court held that this language stripped district courts of their jurisdiction to issue declaratory judgments as well as injunctions. *Grace Brethren Church*, 457 U.S. at 408. Circuit courts interpreting the Johnson Act, which contains similar language limiting the ability of district courts to "enjoin, suspend or restrain the operation of" public utility rates set by state agencies, have reached the same conclusion: the phrase "enjoin, suspend or restrain" covers declaratory relief. *See Brooks v. Sulphur Springs Valley Elec. Coop.,* 951 F.2d 1050, 1054 (9th Cir. 1991); *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1139 (10th Cir. 1974).

Alli is correct to point out that these statutes implicated concerns of federalism. But I find this attempt to distinguish the cases more illuminating than discouraging: if concerns of

5

federalism were enough to persuade the Supreme Court to conclude that declaratory judgments would "enjoin, suspend or restrain" state tax systems, analogous concerns of inter-branch relations would seem enough to conclude that class-wide declaratory judgments would "enjoin or restrain" the operation of a system created by Congress and implemented by the Executive Branch.

Third, § 1252(f)(1)'s reservation of jurisdiction in the Supreme Court does not support the Majority's interpretation. The Majority's argument runs as follows:  if "restrain" bars class actions seeking either an injunction or a declaratory judgment, then the district court would never have jurisdiction to certify a class; if the district court cannot have jurisdiction over a class action, there can never be appellate jurisdiction over a class action; if there is no appellate jurisdiction over a class action, then the Supreme Court could never have jurisdiction; thus, § 1252(f)(1) must allow jurisdiction over classes seeking declaratory relief.  The problem with this argument is that it proves too much.  Since Professor Neuman acknowledges that Article III jurisdiction is remedy-specific, his argument also demonstrates that the Supreme Court will never have jurisdiction to "enjoin" the operation of § 1226(c).  Gerald L. Neuman, *Federal Courts in Immigration Law*, 78 Tex. L. Rev. 1661, 1686 (2000). Moreover, Professor Neuman recognizes that the scope of the Supreme Court's authority to certify a class under its appellate jurisdiction is an open question.  *Id.*  The reservation of jurisdiction in the Supreme Court raises interesting issues of abstract law, but it has no bearing on the meaning of the word "restrain" and does nothing to support the Majority's interpretation.

Fourth, because the statute is not ambiguous, we do not need to look to other portions of the statute for guidance. Alli concedes that the title of a statute does not trump its plain text; the title is relevant only as a tool to resolve doubt about its meaning.  *See* Appellant Br. at 16 n.6; *see also Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 212 (1998) ("The title of a statute . . .cannot limit the plain meaning of the text.") (internal quotation marks and citations omitted).  Here, I have no doubts about its meaning.  And even if I did, if "limit on injunctive relief" "mean[s] what it

says," Maj. Op. at 11, then it would be silly to allow class-wide injunctions as long as plaintiffs use two steps—a class action for declaratory relief followed by individual injunction actions—instead of one.[2]

In my view, the Majority's strongest argument regarding statutory context is that the closely adjacent provision of 8 U.S.C. § 1252(e)(1)(A) prohibits "declaratory, injunctive, or other equitable relief." However I do not see the relevance of the use of the term "declaratory" in § 1252(e)(1). The absence of that term in § 1252(f)(1) does not mean that Congress did not want to prevent actions for declaratory relief. Indeed, if I am right, Congress used the unambiguous word "restrain" because the word has a broad meaning that would encompass declaratory judgments. The words used in § 1252(f)(1) make it plain that the section is broader in scope than § 1252(e)(1)(A). The latter section, which applies to individual aliens, uses nouns to prohibit specific forms of relief. Section 1252(f)(1) seeks to limit a remedy that applies to entire classes and, to achieve that aim, uses broad verbs—"enjoin or restrain"—that encompass a range of court actions. *See Philadelphia Newspapers*, 599

---

[2]  The illusion that a class-wide declaratory judgment ultimately differs in effect from a class-wide injunction quickly dissipates once it becomes apparent that every single member of the class can, and will, immediately seek an injunction grounded on the authority of the declaratory judgment. *See Samuels*, 401 U.S. at 72 (noting that a declaratory judgment can serve as the basis for a subsequent injunction); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (observing that "an action maintainable under both [Federal Rules of Civil Procedure 23](b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3), which serve no useful purpose under (b)(2)") (internal quotation marks and citations omitted). Of course, § 1252(f)(1) allows an individual to bring an injunction, but this misses the point. A class-wide declaratory judgment, followed by individual injunctions from every member of the class is, in every consequence that matters, the same as a class-wide injunction. This is precisely the restraint that § 1252(f)(1) purports to prevent.

7

F.3d at 310 ("In employing intentionally broad language, Congress avoids the necessity of spelling out in advance every contingency to which a statute could apply."). That Congress uses different words to accomplish different objectives in different sections of a statute does not render its commands ambiguous.

Finally, Alli argues that he is not seeking a declaratory judgment to restrain the *operation* of the statute, but only to prevent a *violation* of it. This is legal sleight of hand. Alli wants to obtain a declaration that the Executive Branch's execution of the law is unconstitutional. This is an attempt to "restrain"—to "keep in check or under control" the Executive Branch's execution of the law.

In short, the language of § 1252(f)(1) states that courts have no jurisdiction to enjoin or restrain the operation of immigration detention laws as they apply to entire classes of aliens. I believe that a declaratory judgment, no less than an injunction, is such a restraint. For that reason, I would affirm the District Court.