**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1481
_____

UNITED STATES OF AMERICA

v.

EUPHREM KIOS DOHOU,

                                        Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:16-cr-00065-001)
District Judge: Honorable Robert D. Mariani
_____

Argued: November 13, 2019

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: January 28, 2020)
_____

Quin M. Sorenson             [ARGUED]
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

     *Counsel for Appellant*

Michelle L. Olshefski          [ARGUED]
Office of United States Attorney
235 North Washington Avenue, Suite 311
P.O. Box 309
Scranton, PA 18503

David J. Freed
Joanne M. Sanderson
Office of United States Attorney
228 Walnut Street, PO Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Immigration judges' decisions are presumptively subject to review by Article III courts. Euphrem Kios Dohou never petitioned for review of his final removal order. But now that he is being criminally prosecuted for hindering removal based on

that order, he seeks to attack it collaterally. The Government responds that the District Court lacked jurisdiction to decide that collateral challenge. And the District Court agreed.

We disagree. We hold that a removal order that was never in fact reviewed by an Article III judge remains subject to collateral attack in a hindering-removal prosecution based on that order. The Immigration and Nationality Act authorizes such collateral attacks so long as the original removal order was not "judicially decided." 8 U.S.C. § 1252(b)(7)(A). It is not enough that Dohou could have petitioned for judicial review of that order; he did not. So the order of removal was not "judicially decided." And § 1252(a)(2)(C), a provision that sometimes strips jurisdiction over direct review of removal orders, does not apply to collateral attacks. So we will vacate the District Court's finding that it lacked jurisdiction.

On the merits, Dohou's ineffective-assistance claim requires factfinding. The District Court must also decide whether a statutory- or prudential-exhaustion doctrine bars relief. So we will also remand.

## I. BACKGROUND

In 1992, Dohou came from Benin to the United States on a visitor's visa. He became a lawful permanent resident a few years later. More than a decade after that, he was convicted of conspiring to traffic marijuana. That crime is an aggravated felony, which made him removable.

When Dohou was released from prison in 2015, the Department of Homeland Security began removal proceedings. To start the process, it served him with a notice to appear before

an immigration judge at a date and time to be set later. He then hired an immigration lawyer. After a hearing, the immigration judge ordered Dohou removed to Benin. He never appealed to the Board of Immigration Appeals, or filed a petition for review in the appropriate court of appeals.

Federal agents repeatedly tried to take Dohou to the airport to remove him. Each time, they say, he resisted them. So federal prosecutors got involved, and a grand jury indicted him for the crime of hindering his removal. *See* 8 U.S.C. § 1253(a)(1)(A)–(C).

Dohou moved to dismiss that indictment, asserting that it rested on an invalid removal order for two reasons: First, he argued that the absence of a date and time for his removal hearing on the notice to appear deprived the immigration judge of the authority to order him removed. And second, he argued that his counsel before the immigration judge had given ineffective assistance, making his removal proceedings fundamentally unfair.

The District Court denied Dohou's motion. It reasoned that because he had been convicted of an aggravated felony, 8 U.S.C. § 1252(a)(2)(C) stripped it of jurisdiction over his collateral attack on the final removal order.

Dohou now appeals. We review the District Court's jurisdictional holding de novo. *United States v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2006). On the merits, we review questions of law de novo and findings of fact for clear error. *Id.*

4

## II. THE DISTRICT COURT HAD JURISDICTION OVER DOHOU'S COLLATERAL ATTACK

To decide jurisdiction, we must reconcile two provisions of the Immigration and Nationality Act (the Act). Under 8 U.S.C. § 1252(b)(7)(A), district courts may review "the validity" of removal orders that "ha[ve] not been judicially decided." But § 1252(a)(2)(C) deprives courts of "jurisdiction to review" final removal orders of aliens convicted of aggravated felonies or drug crimes.

Dohou was convicted of a drug crime (which is an aggravated felony, to boot). So this appeal presents two questions: Does § 1252(b)(7) give the District Court jurisdiction over Dohou's collateral attack on his removal order? And if so, does § 1252(a)(2)(C) take away that grant of jurisdiction?

We hold for Dohou on both issues. Section 1252(b)(7)(A) lets him collaterally attack his removal order because the immigration judge's order has not been "judicially decided." And § 1252(a)(2)(C) does not strip that jurisdiction because it bars only direct review of removal orders, not collateral attacks on them.

### A. Section 1252(b)(7) grants the District Court jurisdiction to review the validity of Dohou's removal order

Under § 1252(b)(7)(A), Dohou can move to invalidate his removal order because he was charged with hindering that order. If he prevails, the District Court must "dismiss th[at] indictment." 8 U.S.C. § 1252(b)(7)(C). But he can bring this challenge only if "the validity of [his] order of removal has not been judicially decided." *Id.* § 1257(b)(7)(A).

5

Dohou argues that his removal order has not been "judicially decided" because no Article III judge has reviewed it. The Government counters that Dohou's failure to seek direct judicial review made his order "judicially decided." We agree with Dohou: the statute's text, structure, and context require actual review by an Article III judge—not just an immigration judge, and not just the possibility of judicial review.

We start with the text. While "decided" can refer to decisions by either judges or executive officials, the adverb "judicially" means that the subject, the decider, must be a judge. *See Decision*, *Black's Law Dictionary* (11th ed. 2019) ("[a] judicial or agency determination"); *Judicial*, *Black's Law Dictionary*, *supra* ("[o]f, relating to, or by the court or a judge"). In the federal system, that normally means an Article III judge. By contrast, decisions by administrative officials in the Executive Branch, like immigration judges or the Board of Immigration Appeals, are more aptly described as "nonjudicial" or "quasi-judicial." *See Decision*, *Black's Law Dictionary*, *supra* (defining "nonjudicial decision" as "[a] legal determination rendered by a special tribunal or a quasi-judicial body"); *Quasi-Judicial*, *Black's Law Dictionary*, *supra* ("[o]f, relating to, or involving an executive or administrative official's adjudicative acts").

This dichotomy between administrative and judicial decisions runs throughout the structure of § 1252 too. "Judicial," or some variant of it, appears twenty-one times in that section. Every time, it explicitly or implicitly refers to an Article III court. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(D) (linking "judicial review" to a court of appeals's review of constitutional claims and questions of law); *id.* § 1252(d) (treating "judicial

proceeding[s]" as separate from and coming after "the alien has exhausted all administrative remedies").

Interpreting "judicially" to refer only to Article III courts also makes sense in light of the broader statutory scheme. The government may prosecute an alien for hindering removal only where a "final" removal order is outstanding against him. 8 U.S.C. § 1253(a)(1). A removal order becomes final when the Board affirms it or when the period for appeal to the Board expires. *Id.* § 1101(a)(47)(B). So if that "judicially decided" requirement included immigration judges' decisions, essentially every alien prosecuted for violating § 1253(a) would face a "judicially decided" order. That would make § 1252(b)(7) a practical nullity. We hesitate to read § 1252(b)(7) that way, particularly where the "competing interpretation gives effect to every clause and word" of the Act. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (internal quotation marks omitted).

The Government does not deny this premise. Rather, it argues that Dohou could have sought judicial review (by appealing first to the Board and then to a court of appeals) but failed to do so. But the text requires more than that. Elsewhere, the Act focuses on whether the alien had "the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). But in § 1252(b)(7)(A), the alien's challenge must not only have been judicially *decidable*, but judicially *decided*. And it is not just the order that must have been decided, but its *validity*. That term evokes not just finality, but also correctness. *See Valid*, *Black's Law Dictionary*, *supra* ("[l]egally sufficient," "binding," "[m]eritorious").

The availability of review is not enough. Section 1252(b)(7) focuses instead on whether there was an *actual* judicial decision. Here, there was not. So this provision grants jurisdiction over Dohou's collateral attack.

## B. Section 1252(a)(2)(C) did not strip the District Court of its § 1252(b)(7) jurisdiction

The District Court denied Dohou's motion to dismiss on a different ground. It reasoned that § 1252(a)(2)(C) stripped it of jurisdiction to review Dohou's removal order. That provision states: "Notwithstanding any other provision of law …, no court shall have jurisdiction to review any final order of removal against an alien who is removable" for committing an aggravated felony or listed drug crime. 8 U.S.C. § 1252(a)(2)(C). It lists Dohou's drug offense, so it applies to him. What is less clear is whether that jurisdictional bar is limited to direct review of removal orders under § 1252(a)(1) and (d) or if it extends to collateral attacks under § 1252(b)(7) as well.

We hold that § 1252(a)(2)(C) bars only direct review. It does not use language designed to reach collateral attacks, and we construe jurisdiction-stripping provisions narrowly. So the District Court had jurisdiction to decide the merits of Dohou's collateral attack.

1. *Unlike other immigration provisions, § 1252(a)(2)(C) does not say it reaches collateral attacks.* Many immigration provisions strip Article III courts of jurisdiction over orders to remove certain aliens. *See, e.g.*, 8 U.S.C. § 1231(a)(5) (noncitizens reentering illegally); *id.* § 1252(a)(2)(A)(i) (aliens subject

to expedited removal); *id.* §1105a(a)(10) (enacted Apr. 24, 1996, repealed effective Sept. 30, 1996) (codifying Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) §440(a)) (aliens convicted of listed offenses).

Congress worded these provisions differently, and not all use language designed to reach collateral attacks. Some bar only "review" of removal orders. *See* 8 U.S.C. §1231(a)(5) (a reinstated removal order "is not subject to being reopened or reviewed"); *id.* §1105a(a)(10) (enacted Apr. 24, 1996, repealed effective Sept. 30, 1996) (the removal order "shall not be subject to review by any court"). Others go further, stripping "jurisdiction to review" or "to entertain any other cause or claim arising from or relating to the implementation or operation of [certain] order[s] of removal." 8 U.S.C. §1252(a)(2)(A); *see also id.* § 1105a(e)(1) (enacted Apr. 24, 1996, repealed effective Sept. 30, 1996) (AEDPA §423(a)(2)) (similar, for expedited orders of removal).

This "relating to" language is "typically construed as having a broad, expansive meaning"—one much broader than the text of §1252(a)(2)(C). *Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 160, 165 (3d Cir. 2018). It reaches claims indirectly connected to an underlying removal order, like habeas petitions. *Id.* at 160, 165.

But when a jurisdiction-stripping provision in the Act omits capacious phrases like "relating to," it bars only direct review. *See Charleswell*, 456 F.3d at 352 n.4. In *Charleswell*, we reasoned that §1231(a)(5) may strip us of jurisdiction to review reinstated removal orders. *Id.* But we "c[ould] find no support for the contention that" a provision "withdrawing jurisdiction

over the original deportation order reaches collateral challenges" in a follow-on criminal proceeding. *Id.* The Ninth Circuit has held likewise. *See United States v. Arce-Hernandez*, 163 F.3d 559, 562–63 (9th Cir. 1998) (holding that the since-repealed §1105a(a)(10)'s bar on reviewing orders to remove certain criminal aliens does not reach collateral attacks because it lacks broad "relating to" language). That is so even when the criminal proceeding, like a prosecution for unlawful reentry, depends on a removal order. *See id.* at 563.

When Congress includes broad jurisdiction-stripping language in one section of the Act "but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Sebelius v. Cloer*, 569 U.S. 369, 378 (2013) (quoting *Bates v. United States*, 522 U.S. 23, 29–30 (1997)). In other words, Congress's failure to include the broad "relating to" language in §1252(a)(2)(C) is telling. Because §1252(a)(2)(C) lacks that language, it strips jurisdiction only over direct review of removal orders. It does not bar review of Dohou's collateral attack.

2. *The presumption of Article III review favors construing jurisdiction-stripping provisions narrowly.* Even if the Government's broader reading of §1252(a)(2)(C) were plausible, we would still favor the narrower reading because that provision strips jurisdiction. *See Alli v. Decker*, 650 F.3d 1007, 1013 n.9 (3d Cir. 2011).

We presume that the Executive Branch's actions are subject to judicial review. This presumption is "well-settled" and traces its lineage back to the foundations of our Republic.

*Kucana v. Holder*, 558 U.S. 233, 251–52 (2010) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63 (1993)); *see Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) (quoting Chief Justice Marshall in *United States v. Nourse*, 34 U.S. (9 Pet.) 8, 28–29 (1835)). That presumption applies not only to statutes that foreclose judicial review, but also to those (like the provision here) that may limit avenues of relief. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41 (1967) (applying the presumption to allow pre-enforcement review of administrative action).

To displace our presumption in favor of judicial review, Congress must speak clearly. Before reading a statute so broadly as to strip us of the power to review an executive determination, we require "clear and convincing evidence." *Bowen*, 476 U.S. at 671 (quoting *Abbott Labs.*, 387 U.S. at 141). The Government offers no such evidence here; it simply asserts that the text supports its broader reading. Once again, Dohou's narrower reading prevails.

The parties spill much ink debating whether we should read § 1252(a)(2)(C) in Dohou's favor because a contrary reading would raise "[s]erious constitutional concerns," *Charleswell*, 456 F.3d at 352 n.4 (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987)). Because we resolve this appeal based on § 1252(a)(2)(C)'s text and context as well as the presumption favoring judicial review, we need not address the constitutional issue.

In short, § 1252(a)(2)(C)'s text and the presumption in favor of judicial review support reading the statute to preserve jurisdiction. So we read this provision to bar only direct

11

review, not a collateral attack. We will thus vacate the District Court's finding that it lacked jurisdiction.

## III. ON THE MERITS, WE REMAND FOR FACTFINDING BUT REQUIRE EXHAUSTION

Dohou moved to dismiss his criminal indictment as resting on an invalid removal order. He alleged that his notice to appear was defective and that ineffective assistance of counsel made his immigration proceedings fundamentally unfair.

Dohou's procedural claim is already foreclosed by our precedent, so we will resolve it here. But his ineffective-assistance claim is fact-intensive, so we will remand it to the District Court. Although we doubt that §1252(b)(7) carries the same prerequisites for collateral attacks that Congress spelled out elsewhere in the Act, we need not decide that here. *See* 8 U.S.C. §1326(d). Instead, the District Court should decide on remand whether to require exhaustion.

### A. Our precedent forecloses Dohou's procedural claim

Dohou tries to expand the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). Citing *Pereira*, he argues that the charging document that began his removal process (the notice to appear) was invalid because it omitted the date and time when he had to appear. *See id.* at 2109–11, 2114–16. Because invalid charging documents cannot start removal proceedings, he argues, the immigration judge lacked jurisdiction to find him removable.

But we have already rejected this claim. In *Nkomo*, we held that *Pereira* applies only when an alien seeks discretionary

12

cancellation of removal under §1229b(b)(1), which involves the "stop-time rule." *Nkomo v. Att'y Gen. U.S.*, 930 F.3d 129, 132–34 (3d Cir. 2019). Here, as in *Nkomo*, Dohou's claim involves neither cancellation of removal nor its attendant stop-time rule. So *Pereira*'s holding does not apply.

### B. We remand Dohou's ineffective-assistance-of-counsel claim for factfinding

Before the District Court, Dohou argued that his immigration counsel had provided ineffective assistance. Counsel allegedly failed to present evidence of how bad conditions are in Benin, Dohou's home country. Dohou argues that but for counsel's failure, he would have been eligible for deferral of removal under the Convention Against Torture.

Under the Fifth Amendment's Due Process Clause, Dohou had a right to effective assistance of counsel in his immigration proceedings. *Fadiga v. Att'y Gen. U.S.*, 488 F.3d 142, 155 (3d Cir. 2007). To show that this right was violated, Dohou must prove both that his counsel's performance "prevented [him] from reasonably presenting his case" and that, as a result, he suffered "substantial prejudice." *Id.* (quoting *Khan v. Att'y Gen. U.S.*, 448 F.3d 226, 236 (3d Cir. 2006)). But these showings are fact-intensive, and district judges are "best suited to developing the facts necessary" and weighing them in the first instance. *Massaro v. United States*, 538 U.S. 500, 505–06 (2003). So we will remand Dohou's ineffective-assistance claim to the District Court.

13

### C. On remand, the District Court should consider exhaustion

Before remanding, we confront an unsettled question of law. Under 8 U.S.C. § 1326(d), an alien must clear three hurdles before collaterally attacking a removal order when prosecuted for illegal reentry. He must (1) "exhaust[ ] any administrative remedies that may have been available to seek relief against the order"; (2) show that his removal proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) show that "the entry of the [removal] order was fundamentally unfair." *Id.* Do these same three hurdles apply to § 1252(b)(7) as well, even though that provision does not specify them?

Section 1326(d) is a different provision in the same Act, governing collateral attacks in prosecutions for illegal reentry. Dohou brings a § 1252(b)(7) challenge to his indictment for hindering his removal order. But if he had made the same attack (ineffective assistance) on a different type of indictment (illegal reentry), § 1326(d) would have barred relief unless he could clear its three hurdles.

Some district courts have applied § 1326(d)'s three prerequisites to § 1252(b)(7) claims, reasoning that the two types of claims mirror each other and share a common statutory history. *See United States v. Yan Naing*, 820 F.3d 1006, 1009–10 (8th Cir. 2016) (collecting cases taking this approach, though not resolving the issue). We doubt that approach because it overshoots the text. As noted, when Congress includes language in one part of the Act but omits the same language from a

different part, we presume that it omitted it intentionally. *Cloer*, 569 U.S. at 378.

But we need not decide it here. Even if the statute does not require exhaustion, courts may, prudentially, require exhaustion. "It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). Here, if Congress has not mandated exhaustion by statute, "sound judicial discretion [would] govern[ ]" its application. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

Prudential exhaustion would require us to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion. *Id.* at 146. But even when courts might otherwise require exhaustion, they may excuse it when, for instance, "waiver, estoppel, tolling or futility" applies. *Wilson v. MVM, Inc.*, 475 F.3d 166, 174 (3d Cir. 2007). We also excuse prudential exhaustion "when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights." *Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir. 1980).

Dohou claims that his lawyer's ineffective assistance violated his constitutional right to due process. So even if he did not exhaust, the clear-violation exception could apply. Perhaps other exceptions could too. But we leave it to the District Court to decide in the first instance these statutory and prudential issues and whether Dohou in fact exhausted his claims.

15

\* \* \* \* \*

No Article III court has yet reviewed the validity of Dohou's removal order, so it has never been "judicially decided." Under 8 U.S.C. § 1252(b)(7), he can thus collaterally attack it in his hindering-removal prosecution. Also, § 1252(a)(2)(C) poses no bar to his collateral attack: it lacks the broad language of other jurisdiction-stripping provisions, and the presumption of judicial review also favors reading it narrowly. So we will vacate the District Court's finding that it lacked jurisdiction and remand Dohou's ineffective-assistance claim.

On remand, the District Court must find facts and decide whether Dohou's immigration lawyer provided ineffective assistance, making his removal order (and thus his criminal prosecution based on it) fundamentally unfair. It must also consider whether the statute requires exhaustion, whether prudentially to require exhaustion, and if so whether that violation was clear enough to excuse prudential exhaustion.